SALTER, J.
Milan Investment, an owner of property within the boundaries of Miami’s Downtown Development Authority (DDA), appeals a final summary judgment dismissing with prejudice a challenge to the constitutionality of the DDA itself and the property tax imposed to fund the DDA. We affirm in part, reverse in part, and remand the case for further proceedings.
The central issue before the trial court at this procedural stage was whether Milan Investment’s challenge — intended for eventual certification as a class action— *663 was barred by the four-year statute of limitations[1] and this Court’s decision in Paresky v. Miami-Dade Board of County Commissioners, 893 So.2d 664 (Fla. 3d DCA 2005). We affirm the trial court’s dismissal ruling insofar as Milan Investment sought a declaratory judgment that the establishment of DDA and its boundaries was unconstitutional. However, because the City of Miami’s authorization of millage for properties within the DDA boundaries is enacted from year to year by the City Commission, we conclude that Paresky is inapplicable to the 2008 property tax component and that this part of the challenge should not have been dismissed with prejudice.

Background

The DDA is not an independent taxing district. It operates under the governance of the City of Miami. The DDA’s boundaries are the City’s “downtown,” and comprise less than all of the area within the City itself. The Florida Legislature authorized “downtown development districts” in 1965 as a means to “remedy existing conditions amounting to blighted business areas, halt further deterioration, and revitalize the central business districts of the larger cities where those conditions exist....”[2] Subsequent legislation in 1971 and 1999 renewed the authorization for such districts and enacted section 166.0497, Florida Statutes (2008) (establishing procedures for altering, amending, or expanding an existing district’s boundaries).
Sections 14-51 through 14-62 of the Code of the City of Miami establish the powers, composition of the board, and procedures for the DDA. Section 14-59 requires the preparation of an annual budget, and section 14-60 authorizes an annual ad valorem tax levy to finance the DDA’s operations:
The city commission is authorized to levy an additional ad valorem tax on all real and personal property in the downtown district as described in this article, not exceeding one-half mill on the dollar valuation of such property, for the purpose of financing the operation of the downtown development authority. This levy of one-half mill per dollar ad valo-rem tax shall be in addition to the regular ad valorem taxes and special assessments for improvements imposed by the city commission.
The last amendment to the boundaries of the DDA district occurred in 2002, but the millage for each fiscal year is levied in a municipal ordinance enacted by the City Commission. In this case, the ordinance for the DDA levy challenged by Milan Investment was City Ordinance 13029, passed in September 2008. The ordinance passed a “tax of five-tenths (.5) mills on the dollar for the purpose of financing the operation of the Downtown Development Authority” for the City’s fiscal year October 1, 2008, through September 30, 2009.
Milan Investment paid the City’s basic municipal property tax and the additional amount levied for the DDA in December 2008, and it filed its lawsuit later that month. In Count I, Milan Investment sought declaratory relief that the 1965 statute authorizing the DDA was unconstitutional; that the 1971 and 1999 amendments were unconstitutional; that “DDA has been funded in violation of the law from its inception;” that “DDA’s boundaries have been expanded illegally;” and that the imposition of aggregate millage within the DDA has been non-uniform (in comparison to the millage applied to properties within the City but not within the DDA boundaries), in violation of the Flori *664 da and U.S. Constitutions. In Count II, Milan Investment sought a permanent injunction against the further imposition of any property tax for DDA, and in Count III, Milan Investment sought a refund “of all sums illegally collected ... to the full extent of all claims allowable under the statute of limitations.”

Analysis

The City and DDA are correct in their assertion that the four-year statute of limitations, § 95.11(3), applies to (and bars) Milan Investment’s challenges to the establishment of the DDA and its boundaries. Those allegedly-unconstitutional statutes and ordinances were enacted six years before (and even earlier, as to some of the enactments) Milan Investment’s lawsuit was filed. Paresky, 893 So.2d at 665.
In the case of the separate and later City ordinance imposing the half-mill DDA levy for the fiscal year beginning October 1, 2008, however, the challenged ordinance was enacted by the City within the limitation period and thus the challenge is not time-barred.[3] The annual municipal ordinance to impose the DDA millage is readily distinguishable from cases involving special assessments approved for the repayment of industrial bonds. In Keenan v. City of Edgewater, 684 So.2d 226 (Fla. 5th DCA 1996), the four-year statute of limitations was held to commence when the special assessment for infrastructure improvements was approved by resolution (versus the date of each annual assessment and collection of the amount so approved). In Fredrick v. Northern Palm Beach County Improvement District, 971 So.2d 974 (Fla. 4th DCA 2008), certain drainage taxes and impact fees were authorized in 1990 and 1993 to fund long-term improvements. When property owners challenged those assessments in 2004, the court held that the four-year statute of limitations barred the action. As a matter of public policy, the authorizing resolutions were held to have provided adequate notice to present and future property owners, and the owners’ interests were outweighed by the taxing authority’s need for “certainty in creating water management plans and funding those plans.” Id. at 980.
Here, the City has not tied a special assessment or impact fee to any specific long-term financing for municipal improvements. The City has the authorization, but not an obligation, to impose the special levy of up to a half-mill to fund the DDA. It makes that decision year by year. The unique policy considerations regarding long-term bonds and infrastructure projects, as in Keenan and Fredrick, are inapplicable.

Conclusion

We affirm the final summary judgment as it pertains to the state and municipal actions establishing the DDA and its territorial boundaries. We reverse that portion of the judgment determining that the four-year statute of limitations bars Milan Investment’s constitutional challenge to the 2008 ordinance fixing a half-mill per dollar ad valorem tax exclusively within the boundaries of the DDA district. In doing so, we confirm the applicability of the non-claim statute, § 194.171, to that challenge. Our reversal permitting the *665 challenge to the 2008 half-mill DDA levy also permits Milan Investment’s refund claim to proceed regarding that levy. We express no opinion regarding Milan Investment’s class certification allegations.
Affirmed in part, reversed in part, and remanded for further proceedings.

. Section 95.11(3), Florida Statutes (2008).

. Ch. 65-1090 at 692, Laws of Fla.

. As the parties have recognized in their briefs, the four-year statute of limitations is not the only timeliness issue presented on the face of the complaint. Milan Investment’s claim challenging the annual imposition of the special DDA levy also required compli-anee with the non-claim statute, section § 194.171, Fla. Stat., by commencing that challenge within 60 days of the date the tax roll was certified by the tax collector. Ward v. Brown, 894 So.2d 811 (Fla.2004).