# Third District Court of Appeal

## State of Florida

Opinion filed May 27, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D14-540; 3D14-539; 3D14-538
Lower Tribunal Nos. 12-48708; 11-40596; 08-77800

_____

**Milan Investment Group, Inc., etc.,**
Appellant,

vs.

**City of Miami, etc., et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Gisela Cardonne Ely, Judge.

Linda L. Carroll, for appellant.

R.A. Cuevas, Jr., Miami-Dade County Attorney, and Jorge Martinez-Estevez, Assistant County Attorney; Victoria Mendez, City Attorney, and John A. Greco, Deputy City Attorney, and Warren Bittner, Deputy Emeritus; Cole, Scott & Kissane and Thomas E. Scott, Sr., and Scott A. Cole, for appellees.

Before WELLS, EMAS and SCALES, JJ.

EMAS, J.

Milan Investment Group, Inc., individually, and on behalf of all others similarly situated[1] ("Milan"), appeals three final summary judgment orders entered by the trial court, in three separately-filed cases below, all in favor of the City of Miami ("City"), Miami Downtown Development Authority Board ("DDA"), the Miami-Dade County Property Appraiser ("Property Appraiser"), the Miami-Dade Tax Collector ("Tax Collector"), and the Florida Department of Revenue ("DOR") (collectively referred to as "Appellees").[2] We conclude that the City is constitutionally authorized to levy the ad valorem taxes at issue, and thus, affirm the trial court's summary judgment orders.

**BACKGROUND**

On December 16, 2008, Milan filed a class action complaint for declaratory, equitable, monetary and other relief against Appellees (Case No. 08-77800). Milan, a real property owner in the City's "central business district,"[3] asserted in its complaint that it, and other similarly situated property owners, had been unconstitutionally taxed by the City an additional one-half mill ad valorem tax for the 2008 tax year.[4] The tax was levied by the City pursuant to City Ordinance

---

[1] Milan sought class certification below, but the trial court did not rule on the motion and it is not an issue in this appeal.

[2] Although three separate appeals were filed, this Court consolidated the appeals for all purposes on June 27, 2014.

[3] The term "central business district" was defined by the Florida Legislature in 1965, with the passage of Chapter 65-1090, Laws of Florida, as "the area in a municipality establishing an authority zoned and used principally for business."

[4] Milan sought class certification on behalf of "all persons or entities that were

2

13029, passed in September 2008, which assessed a tax of one-half mill on the dollar valuation of all property located within the boundaries of the City's "Downtown Development District." This ordinance was enacted pursuant to Chapter 65-1090, Florida Laws, which, according to the City, authorized it to impose up to an additional one-half mill on property located in the City's central business district.[5]

Chapter 65-1090 was enacted by the Legislature in 1965, for the purpose of establishing "a downtown development authority to prevent further deterioration in the central business district and correct existing conditions in any municipality of the state having a population in excess of two hundred and fifty thousand (250,000) inhabitants." It authorized municipalities, such as the City, to "create and establish a downtown development authority" to, among other things, "plan and propose, within the downtown area, public improvements of all kinds . . . which may be necessary or appropriate to the execution of any such plan which . . . will aid in the economic growth of the downtown area."[6] Further, the municipality's "governing body"[7] was "authorized to levy an additional ad valorem

subject to the loss of their money or property by way of taxation for or on behalf of the DDA and that paid such tax."

[5] The City Commission annually adopts an ordinance for the purpose of levying the DDA tax to properties within its borders.

[6] The term "downtown" was defined in Chapter 65-1090 as "a specifically defined area or zone of the city in the central business district, established by the governing body of the municipality."

[7] The term "governing body" was defined in chapter 65-1090(1) as "the elected

tax on all real and personal property in the downtown district not exceeding one-half mill on the dollar valuation of such property for the purpose of financing the operation of the Authority."

Pursuant to chapter 65-1090's authority, the City enacted Ordinance No. 7370, which established a downtown development authority ("DDA"), effective November 17, 1965, and authorized the City Commission to levy up to one half mill ad valorem tax on all real and personal property located within the designated DDA boundaries. Thereafter, the City expanded the geographic boundaries of its DDA on three separate occasions: July 8, 1983, April 27, 1989, and December 12, 2002. The City assessed the one-half mill ad valorem tax on properties located within the DDA every year from 1965 to the present.

In 1971, the Florida Legislature enacted a general law, chapter 71-29, Florida Laws, whose purpose was to repeal numerous Florida general laws of local application. Included within this comprehensive repealing statute was chapter 65-1090. Section 3 of chapter 71-29, however, preserved the DDA in a savings clause.[8] Thereafter, the DDA continued to function under the City's annual levies of an ad valorem tax that derived from chapter 65-1090. Subsequently, the Florida

_____

body of a municipality, having legislative powers."

[8] The savings clause reads as follows: "(3) All of the enumerated chapters contained in section 2 affecting a particular municipality or municipalities shall become an ordinance of that municipality on the effective date of this act, subject to modification or repeal as are other ordinances."

Legislature amended two statutes to update the underlying authority for the DDA. In 1999, the Legislature amended section 166.0497 of the Florida Statutes to allow the DDA's governing body to "alter, amend or expand the boundaries" of the DDA. In 2008, the Legislature amended section 200.185(5)(a)2. to confirm that the governing body with the authority to approve certain DDA millage is the governing body of the municipality.

In its complaint, Milan sought to have the court determine (1) that chapters 65-1090, 71-29, and 99-208 §36, Florida Statutes, were unconstitutional; (2) that the City's levying of the one-half mill ad valorem tax on property in the central business district was unconstitutional and illegal; (3) that the DDA ordinance had been repealed; and (4) that the DDA was not an independent special district. Further, Milan sought to enjoin the City and the DDA from operating the DDA or levying and collecting any further sums in excess of the tax burden imposed by the City generally. Finally, Milan sought a refund, on behalf of all members of the Class, of "all sums illegally collected."[9]

Appellees moved to dismiss Milan's complaint below, asserting, inter alia, that its claims were barred by: (1) the sixty-day non-claim statute pursuant to section 194.171(2), Florida Statutes (except for the current year's tax bill); and (2)

---

[9] It is not clear from the complaint whether Milan sought a refund on behalf of itself or any class members for taxes paid in the years prior to 2008, but it appears so since it sought a refund "of all sums illegally collected."

5

the general four-year statute of limitations for actions challenging a local government ordinance or resolution, section 95.11(3)(c), Florida Statutes (2009).

The trial court granted Appellees' motion to dismiss with prejudice, finding the four-year statute of limitations had run before the filing of the complaint because the cause of action accrued no later than 2002, the date the DDA's boundaries were last expanded, as alleged in Milan's complaint.

Milan appealed the dismissal, and this Court affirmed in part, reversed in part, and remanded for further proceedings in the trial court. Milan Inv. Grp., Inc. v. City of Miami, 50 So. 3d 662 (Fla. 3d DCA 2010) ("Milan I"). In Milan I, this court recognized that "[t]he central issue before the trial court at this procedural stage was whether Milan Investment's challenge—intended for eventual certification as a class action—was barred by the four-year statute of limitations and this Court's decision in Paresky v. Miami-Dade Board of County Commissioners, 893 So. 2d 664 (Fla. 3d DCA 2005)."

In resolving the issue, this Court held that the trial court correctly determined that the four-year statute of limitations in section 95.11(3), Florida Statutes, barred Milan's "challenges to the establishment of the DDA and its boundaries," because "[t]hose allegedly-unconstitutional statutes and ordinances were enacted six years before . . . Milan Investment's lawsuit was filed." We held, however, that "[i]n the case of the separate and later City ordinance imposing the

6

half-mill DDA levy for the fiscal year beginning October 1, 2008, . . . the challenged ordinance was enacted by the City within the limitation period and thus the challenge is not time-barred." Accordingly, we affirmed "the final summary judgment as it pertain[ed] to the state and municipal actions establishing the DDA and its territorial boundaries," but "reverse[d] that portion of the judgment determining that the four-year statute of limitations barred Milan Investment's constitutional challenge to the 2008 ordinance" and remanded for further proceedings. Milan, 50 So. 3d at 664.

On remand, Milan filed an amended complaint, wherein it again asserted the 2008 ordinance levying the DDA tax was unconstitutional, but also included the 2009 and 2010 ordinances levying the DDA tax on its properties for the 2009 and 2010 tax years.[10] Milan sought, on its own behalf and on behalf of the alleged class, declaratory relief, money damages and/or refunds of the taxes (which it had already paid), and also sought relief under the Federal Civil Rights Act, 42 USC §1983. Appellees again moved to dismiss, but the motion was denied.

Milan also filed a second lawsuit against the Appellees (Case No. 11-40596), seeking the same relief for the 2011 tax year; and a third lawsuit (Case No. 12-48708), seeking the same relief for the 2012 tax year.

---

[10] Ordinance No. 13100 was adopted on September 24, 2009 and Ordinance No. 13205 was adopted on September 27, 2010.

7

Appellees filed motions for summary judgment in all three cases, which had been assigned to the same circuit court judge. Milan also moved for summary judgment in all three cases, and after a hearing on May 15, 2013, the trial court granted summary judgment in favor of Appellees, and denied Milan's motions for summary judgment. Specifically, the trial court determined that the Third District Court of Appeal, in Milan I, "foreclosed" Milan's claim that there was no valid authorization for the ordinance when it said "[t]he City has the authorization, but not the obligation, to impose the special levy of up to a half-mill to fund the DDA." Milan I, 50 So. 3d at 664. The court entered final judgments in favor of Appellees by separate order in each of the three cases, and these consolidated appeals followed.

## ANALYSIS[11]

---

[11] The trial court determined it was "foreclosed" from reaching the constitutional issue by this court's opinion in Milan I. This was in error, because the constitutional issue was never raised in, nor decided by, this Court. The only issue before the appellate court in Milan I was whether Milan's claims were barred by the statute of limitations. We recognize that, as a general rule, this Court does not "decide issues not ruled on by the trial court in the first instance." Akers v. City of Miami Beach, 745 So. 2d 532 (Fla. 3d DCA 1999). This is especially true of constitutional challenges. Glendale Fed. Sav. and Loan Ass'n v. State, Dept. of Ins., 485 So. 2d 1321 (Fla. 1st DCA 1986). This rule "may be relaxed if the constitutional issues are fully briefed and relate to matters of law exclusively, and the full record is before the court." Id. at 1325 (internal citations omitted). In the instant case, the parties are in agreement that this Court should decide the constitutional issues, as there is a complete record below and the issues were fully presented to the trial court and have been fully briefed on appeal. Given the unique posture of this case, and our *de novo* standard of review, we exercise our discretion and reach the merits of the issues raised. We do so, however, in full

The City's authority to impose an annual ad valorem tax to fund the DDA originates in the Florida Constitution. Both Article VII, §§ 1(a) and 9(a) of the Florida Constitution require that the tax be authorized by "law"—in other words, by an act of the Florida Legislature.

The requisite legislative enactment can be found in chapter 65-1090, Laws of Florida. Chapter 65-1090 was the original legislation establishing the DDA and granting municipalities such as the City the authority to levy and collect an ad valorem tax on property located within the boundaries of the DDA. Section 11 of chapter 65-1090 provides that "the governing body is authorized to levy an additional ad valorem tax on all real and personal property in the downtown district not exceeding one-half mill on the dollar valuation of such property for the purpose of financing the operation of the Authority."

Nonetheless, Milan alleges that subsequent legislation—namely chapter 71-29, Laws of Florida—repealed chapter 65-1090, thereby terminating the City's authority to levy the DDA's ad valorem tax. However, although chapter 71-29 eliminated chapter 65-1090 from the roster of Florida's laws, through an express savings clause chapter 71-29 preserved the substance of chapter 65-1090, including a preservation of the City's authority to levy the DDA's ad valorem tax.

---

recognition that such an exercise of discretion represents the rare exception to the general rule.

The savings clause in chapter 71-29 placed the provisions of chapter 65-1090 into a municipal ordinance.[12] As a general law, chapter 71-29 carries out and implements the intent of Article VII, § 9(a) of the Florida Constitution. We find uninterrupted authority for the City's ad valorem taxation to fund the DDA, from the Florida Constitution through chapters 65-1090 and 71-29, and down to the municipality.

Existing legislation, passed subsequent to chapter 71-29, also supports the conclusion that the Florida Legislature did not intend to repeal the authority granted to the City to levy the one-half mill tax for DDA property. See § 166.0497, Fla. Stat. (2008) (authorizing "the governing body of a municipality that has created a downtown development district pursuant to chapter 65-1090" to adopt an ordinance altering, amending or expanding the district's boundaries.); § 200.185(5)(a)2., Fla. Stat. (2008) (recognizing that the governing body of the municipality is the governing body of the DDA for the levy of millage).

Since preserving the DDA in 1971, the Legislature has on two occasions amended statutes that acknowledge the DDA's existence. It would make little sense for the Legislature to allow a municipality to alter, amend or expand the

_____

[12] The role and significance of the ordinance appears to be the genesis of Milan's concern. As Milan correctly points out, a municipal ordinance cannot be the source of an ad valorem tax. See, e.g., State v. City of Port Orange, 650 So. 2d 1 (Fla. 1994) (citation omitted). In this case, however, the City is not originating the tax; the savings clause is preserving within the municipality an authority to tax that is already established by state legislation.

boundaries of a district, but prohibit taxation to fund the operation of the district. Nor would it make sense to assure the district's governing body's authority to levy certain millage that it otherwise would have no authority to levy. These legislative actions in 1999 and 2008 must be harmonized with chapters 65-1090 and 71-29. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992).

Finally, Milan alleges that the additional ad valorem tax the City levies on property owners located within the DDA violates Article VII, section 2 of the Florida Constitution. This provision requires that "[a]ll ad valorem taxation shall be at a uniform rate within each taxing unit[.]" Art VII, § 2, Fla. Const. Milan argues that DDA property owners are paying at a non-uniform rate as compared to other property owners of the City.

Chapter 65-1090 authorized the levy on property owners within the DDA of not more than a one-half mill in ad valorem taxes. This additional tax is tethered to the municipal purpose that underlies the DDA: the continuing improvement of the City's central business district. In Gallant v. Stephens, the Florida Supreme Court upheld the constitutionality of an additional ad valorem tax in an analogous situation. Gallant v, Stephens, 358 So. 2d 536 (Fla. 1978).

In Gallant, a county established a municipal service taxing unit and levied additional millage on county property owners for municipal services provided by

11

the county. As in the instant case, the local government itself levied the additional millage within a defined geographical area; and approval of the additional millage by a referendum of the area property owners was not required by the authorizing legislation. The Court held that the uniformity of taxation requirement of Article VII, section 2 was not violated because all of the property owners within the municipal service taxing unit were taxed uniformly. Id. at 540-41. The Constitution's uniformity requirement does not inhibit a taxing authority, such as the City, from levying additional ad valorem taxes so long as there is legislative authority for the taxation.

Accordingly, we hold that the City was authorized, and continues to be authorized, to levy the ad valorem taxes in the City's downtown development area, and affirm the trial court's orders entering summary judgment in favor of the City.