DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CITY OF FORT PIERCE,**
Appellant,

v.

**AUSTRALIAN PROPERTIES, LLC; WTC, LLC; TED GLASRUD ASSOCIATES FL, LLC; WILLIAM D. MCKNIGHT** and **KATHRYN A. MCKNIGHT** on behalf of themselves and all others similarly situated,
Appellees.

No. 4D14-2728

[November 12, 2015]

Appeal of non-final order from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Dwight L. Geiger, Judge; L.T. Case No. 562011CA003396.

Virginia B. Townes and Carrie Ann Wozniak of Akerman LLP, Orlando, for appellant.

Harold G. Melville of Melville & Sowerby, P.L., Fort Pierce, for appellees.

MAY, J.

The City of Fort Pierce ("City") appeals a non-final order granting a motion for class action certification. It argues the court erred in certifying the class for multiple reasons, including that the plaintiffs lacked standing because the statute of limitations had run. We agree with this argument and reverse the order certifying the class.

In 2005, the City adopted Ordinance No. K-390, codified as the Stormwater Management Utility ("SMU"). Section 20-71 established stormwater management services as a utility under section 403.0893, Florida Statutes, and provided for the levy of fees "against all property in the city in proportion to the property's contribution to the stormwater runoff as determined by the impervious surface of developed property and the runoff ratio for the future use of undeveloped property." City of Fort Pierce Code of Ordinances, § 20-71 (2005). The code defined an "[e]quivalent residential unit ('ERU')" as "[t]he representative average impervious area of a single family residential property located in the city."

*Id.* § 20-72.  All property within the city is "subject to SMU fees, unless specifically exempted."  *Id.* § 20-74.  A formula assigns ERUs to properties with the fee per ERU established by separate resolution.  *See id.* §§ 20-75, 20-76.  The only property exempted is "[p]ublic roads and rights-of-way."  *Id.* § 20-77.

A property owner can request a fee adjustment from the SMU director.  *Id.* § 20-79.  If dissatisfied with the result, the owner can petition the city manager, whose decision is final.  *Id.* § 20-80.[1]

In 2011, four owners of property within the City brought a class action for declaratory and injunctive relief, and damages against the City.  The class representatives filed an amended complaint on their behalf and that of thousands of other owners, who had been assessed a SMU fee, but whose property was neither connected to, nor drained through, the City's stormwater system.

They alleged the City's system consisted of nine drainage or basin areas located in the older, more densely populated, part of the City.  The City also assessed numerous annexed properties outside of those basins, which had never drained through the City's system.  They claimed sections 20-71 through 20-81 were arbitrary, capricious, unreasonable, and invalid on their face because they assessed fees against unconnected properties.  They alleged the fees were not legitimate user fees because the unconnected properties did not receive a benefit, resulting in an illegal tax.  They sought a refund of assessed fees for the tax years of 2007-2012.

---

[1] In November 2013, the City amended the SMU by Ordinance No. L-302, effective on passage.  A whereas clause for Ordinance No. L-302 provided that it was the intent

> of the City Commission that the SMU director, in responding to requests for adjustment of the stormwater utility fee, may adjust or waive payment [of the fee] to the extent the fees otherwise due are not reasonably commensurate with the benefits accruing to the property and/or the burdens the property imposes on the SMU.

The codified amendment also created a stormwater management fees and credits appeals board to hear appeals from any decision of the SMU director pursuant to section 20-79.  City of Fort Pierce Code of Ordinances, § 20-80 (2013).  Section 20-79 now allows the SMU director to adjust the fee so it bears a reasonable relationship to the benefits received by the property, and may exempt the property.  *Id.*  The lawsuit concerns only tax years preceding the amendment.

2

Local governments like the City, the Department of Environmental Protection ("DEP"), and the water management districts are responsible for developing compatible stormwater management programs. § 408.0891, Fla. Stat. (2014). Section 403.0893(1) allows counties and municipalities to create one or more stormwater utilities and to adopt utility fees to construct, operate, and maintain these systems. Alternatively, they may create benefit areas and assess a per acreage fee upon all the property owners within a particular benefit area, assessing different subareas different per acreage fees based upon a reasonable relationship to benefits received. § 403.0893(3), Fla. Stat. Local government can use the non-ad valorem method to levy, collect, and enforce the fees assessed, pursuant to section 403.0893, whether the government chooses to create a utility under subsection (1) or benefit areas under subsection (3). *Atl. Gulf Cmtys. Corp. v. City of Port St. Lucie*, 764 So. 2d 14, 17 (Fla. 4th DCA 1999).

The City moved to dismiss the amended complaint, and argued:

> (1) the facial constitutionality attack is barred by the applicable statute of limitations; and

> (2) the plaintiffs failed to exhaust their administrative remedies.

The trial court denied the motion. The City answered the complaint and asserted the following defenses, among others: (1) statute of limitations, (2) failure to exhaust administrative remedies, and (3) failure to satisfy class action certification requirements.

The plaintiffs moved for class certification under Florida Rule of Civil Procedure 1.220. The proposed class was all owners of real property within the City, assessed an SMU fee from 2007 through 2012, and whose property was unconnected.

The City responded by asserting that:

> (1) each representative plaintiff lacked standing because of the statute of limitations and their failure to exhaust administrative remedies;

> (2) the class was not readily ascertainable because each potential class member must prove the City's liability, resulting in an improper fail-safe class;

> (3) there was no commonality of fact or law because the class

3

definition required individual proof of class membership;

(4) none of the representative plaintiffs were typical or adequate to represent class members because of their lack of standing; and

(5) the predominance of common questions of law or fact, and superiority of class representation over other methods of adjudication did not exist because of the necessity for individual proof as to potential class members.

The plaintiffs argued the SMU does not provide services to portions of the City that were formerly within the unincorporated sections of St. Lucie County. Those areas receive stormwater management services from the North St. Lucie River Water Control District, the South Florida Water Management District canal system, or natural drainage pathways or tributaries owned by the state and managed by the DEP. These properties pay fees to the other entities for stormwater management, but also pay the City for stormwater utility services they do not receive.

The City replied that the SMU fee was neither a tax, as the revenues are kept separate for the SMU upkeep, nor a special assessment. The SMU fee was a user fee established under section 403.0893(1). *See City of Gainesville v. State*, 863 So. 2d 138, 144–46 (Fla. 2003) (discussing factors that assist in determining whether stormwater fees are user fees or special assessments).

The plaintiffs claimed the SMU fees were annual assessments, and the statute of limitations began to run anew on the date of the assessment. Therefore, the statute of limitations had not run for the 2007 and subsequent tax years. They claimed it was futile to try to exhaust their administrative remedies because neither the city engineer nor the city manager could exempt a property from the SMU fee. The unfettered discretion of the city engineer and manager was an unconstitutional delegation of legislative authority. And, the proposed class was well-defined and objectively verifiable.

At the class certification hearing, testimony revealed that all four plaintiffs purchased their properties before 2007 and paid their SMU fees each year. One owner of two properties sought an adjustment for one of them, but had his paperwork rejected because it was not prepared by an engineer, and the property's retention pond was not properly maintained. The owner never submitted the requested additional documentation so there was no decision and no appeal. The manager of that property did

not bother seeking an adjustment for the other property because he was busy and had not succeeded with the original request.

The plaintiffs also called a senior pastor of Westside Baptist Church, a purported class member. He testified the church retained a professional engineer to advise the City that none of the church's stormwater went through the City's system. The City told him the maximum reduction was forty-eight percent regardless of whether the church's stormwater drained through its system.

The pastor then met with the city manager and each commissioner; he wrote a letter to the mayor. At the subsequent commission meeting, the commissioners opposed the exemption because the City could potentially lose $1.1 million. Ultimately, the pastor received a letter advising him the City was evaluating ways to reduce the church's assessment or exempt it. A few days later, the pastor learned the church was given an eighty percent credit, but not an exemption. The pastor found the answer unacceptable, but did not appeal.

The plaintiffs' expert, a general civil consulting engineer, testified that he could determine which parcels drained into the Atlantic Ocean without going through the City's system. The city engineer testified that the SMU was responsible for maintaining the existing city stormwater system, for planning projects for flood control and water quality, and for maintaining permits for the National Pollution Discharge Elimination System. It was responsible for water quality from all the parcels in the City, not only those that drain through the original nine basins.

The SMU participated in developing the Basin Management Action Plan, addressing water quality throughout the St. Lucie River Basin. Its goal was to reduce nutrient loading of stormwater discharge to improve water quality. The unconnected properties also drain into the Indian River Lagoon, and the SMU was obligated to remediate water quality caused by that drainage.

The City's expert testified that the water control districts were responsible for flood control during the wet season and impoundment of stormwater runoff for agricultural purposes during the dry season, but not for water quality and nutrient reduction; the SMU was responsible for that.

The trial court granted the motion for class certification. The court found that a civil engineer in stormwater management could determine the properties within the City whose stormwater did not drain through the City's facilities. The order noted the City creates a one-year assessment

for stormwater management fees with each new tax roll. The order concluded as a matter of law the plaintiffs' claim was a facial constitutional attack, and that the fees were an illegal tax based on invalid special assessments levied on an annual basis.

The trial court found the plaintiffs had established by clear and convincing evidence that further pursuit of administrative remedies was futile because the ordinance did not allow for an exemption. And, evidence established that the church essentially exhausted all administrative remedies without success. The court found that the action had been filed within the four-year statute of limitations under section 95.11(3)(p), Florida Statutes, based on the annual assessment for the relevant years.

Finally, the trial court found the plaintiffs met all the requirements for class certification, pursuant to Florida Rule of Civil Procedure 1.220. From the certification order, the City now appeals.

We review orders granting class certification for an abuse of discretion. *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 102 (Fla. 2011) (explaining that whether a case meets the requirements for class certification is a factual finding).

In determining whether to certify a class, the trial court should focus on class certification rather than the merits of the case, except for considering evidence on the merits as they apply to class certification. *Id.* at 105–06. The proponent carries the burden of pleading and proving the elements of class certification. *Id.* at 106 (citing *InPhyNet Contracting Servs. v. Soria*, 33 So. 3d 766, 771 (Fla. 4th DCA 2010)).

While the City makes several attacks on the certification order, the statute of limitations argument is dispositive. If the statute of limitations bars the representative plaintiffs' claims, they lack standing, cannot be a class member, and the class cannot be certified. *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997) (affirming dismissal of count where representative plaintiff's claim was barred by statute of limitations so the putative class lacked a representative for that count).

The parties agree that a four-year statute of limitations applies. They disagree on when the statute of limitations began to run. The City argues the statute began to run when the ordinance was enacted in November 2005. The plaintiffs argue the statute runs anew with each annual assessment.

The City relies on three cases to support its position: *Fredrick v. North Palm Beach County Improvement District*, 971 So. 2d 974 (Fla. 4th DCA 2008); *H & B Builders, Inc. v. City of Sunrise*, 727 So. 2d 1068 (Fla. 4th DCA 1999); and *Keenan v. City of Edgewater*, 684 So. 2d 226 (Fla. 5th DCA 1996).

In *Keenan*, property owners brought a class action to challenge a special assessment on their properties to build a water and sewer treatment plant. *Keenan*, 684 So. 2d at 227. The plant served the entire city, but only property owners in one portion of the city were specially assessed to pay for it. *Id.* The Fifth District held that the four-year statute began to run when the special assessment was approved by resolution, not from the time the property owners became aware that other property owners were not being assessed. *Id.*

We relied on *Keenan* in *H & B Builders, Inc. v. City of Sunrise*, 727 So. 2d 1068 (Fla. 4th DCA 1999). There, we affirmed the trial court's application of the four-year statute of limitations to bar a property owner's claim. *H & B Builders, Inc.*, 727 So. 2d at 1071. The property owners paid assessments over a period of years and sought to recover interest paid in certain later years when the interest rate had been reduced. *Id.* at 1068–69. The trial court held the statute of limitations began to run when the government first assessed the property; it did not run from the date the property owners made their annual payments. *Id.* at 1069–70.

> [The] installment payment argument would be persuasive if our decision were based upon the general proposition of contract law that in the case of contract obligations payable by installment, the statute of limitations does not begin to run against each installment until the day it becomes due. However, we reject the notion that this general proposition is analogous to payments due on special assessment liens. Special assessments are a method of funding local improvements and are "a creature of statute." We note that *Keenan* specifically recognizes that section 95.11(3)(p) bars any challenge to a special assessment brought more than four years after the governing board of the municipality equalizes and approves the special assessment by resolution, even if the improvements have not been completed.

*Id.* at 1071 (internal citation omitted). We concluded the city's assessment was not subject to annual review "simply because it chose to allow the landowners the convenience of paying their assessment obligations in equal annual installments." *Id.*

7

We reached a similar result in *Fredrick v. North Palm Beach County Improvement District*, 971 So. 2d 974 (Fla. 4th DCA 2008). There, homeowners challenged impact fees and assessments imposed on their properties for the expansion of a road. *Id.* at 975. An improvement district had adopted a water management plan. *Id.* at 976. To pay for it, the district adopted a bond resolution in 1990 and authorized non-ad valorem annual assessments. *Id.* at 976–77. In an unrelated suit, a final judgment validated the bonds in 1990. *Id.* at 976. The documents were recorded in 1990. *Id.* at 977.

In 1993, the Declaration of Covenants was recorded, including a provision that each owner acknowledged the assessment. *Id.* at 976–77. The homeowners bought their properties no later than 1998. *Id.* at 977. They filed suit in 2004 challenging the assessments because other nearby housing developments also benefitted from the improvements without being taxed. *Id.*

The district moved for summary judgment based in part on the statute of limitations. *Id.* at 977–78. The homeowners argued they did not learn until 2003 that other developments were not being assessed. *Id.* at 978. The trial court entered a summary judgment for the district. *Id.* The property owners appealed.

We concluded the statute of limitations began to run from the creation of assessments or the date of the city's approval. *Id.* at 979. That decision balanced the property owners' right to adequate notice against the district's need for certainty in its decisions and economic affairs. *Id.* at 980. We held the property owners' interests were outweighed by the district's need. *Id.* We affirmed the summary judgment. *Id.*

The plaintiffs argue, however, that the utility fees are annual assessments, with each year starting the statute of limitations anew. *See Milan Inv. Grp., Inc. v. City of Miami*, 50 So. 3d 662 (Fla. 3d DCA 2010). In *Milan*, a property owner challenged the establishment and boundaries of a downtown development authority and the imposition of an ad valorem tax on properties within those boundaries. *Id.* at 662–64. The Third District agreed the statute of limitations barred the plaintiff's challenge to the establishment of the authority and its boundaries, but reversed an order dismissing the claim concerning the ordinance imposing the tax for fiscal year 2008. *Id.* at 664–65.

After discussing *Keenan* and *Frederick*, the Third District noted that the case did not involve the long-term financing of municipal

improvements.  Instead, the city decided annually whether to impose the optional special levy to fund the authority.  *Id.* at 664.  It allowed the challenge to the 2008 levy and the claim for refund to proceed.  *Id.*  We find *Milan* distinguishable.  It did not involve policy considerations of long-term bonds or infrastructure projects, did not involve a singular assessment to be paid over time, and the fees were not dedicated to a specific capital project.

Because the utility fee is more akin to a special assessment, *Fredrick*, *Keenan*, and *H & B Builders* control.  The trial court abused its discretion in finding the plaintiffs were not barred by the statute of limitations.  As the statute of limitations bars the class representatives' claims, they have no standing.  We therefore reverse and remand the case to the trial court to decertify the class.  It is unnecessary for us to address the other issues raised.

*Reversed and Remanded.*

GROSS and TAYLOR, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**