**TOWN OF GULF STREAM, Village of Tequesta, City of Riviera Beach, Town of Jupiter, Town of Palm Beach Shores, Town of Manalapan, Town of Mangonia Park, City of Palm Beach Gardens, Town of Highland Beach, Town of Lake Park, City of West Palm Beach, Town of Ocean Ridge, and City of Boca Raton, municipal corporations of the State of Florida, Appellants,**

v.

**PALM BEACH COUNTY, a political subdivision, and Sharon R. Bock, in her Official Capacity as the Clerk and Comptroller of Palm Beach County, Florida, Appellees.**

No. 4D15–1753

District Court of Appeal of Florida, Fourth District.

[December 21, 2016]

---

Jane Kreusler–Walsh and Stephanie L. Serafin of the Law Office of Kreusler–Walsh, Compiani & Vargas, P.A., West Palm Beach, and Douglas N. Yeargin, West Palm Beach, for Appellant City of West Palm Beach.

John C. Randolph of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for Appellant Town of Gulf Stream.

R. Max Lohman of Lohman Law Group, P.A., Jupiter, for Appellant City of Palm Beach Gardens.

Kenneth G. Spillias, Ocean Ridge, for Appellant Town of Ocean Ridge.

Glen J. Torcivia of Torcivia, Donlon, Goddeau & Ansay, P.A., West Palm Beach, for Appellant Town of Highland Beach

Pamala Hanna Ryan, Riviera Beach, for Appellant City of Riviera Beach.

Keith W. Davis of Corbett, White, Davis and Ashton, P.A., Lantana, for Appellants Village of Tequesta, Town of Palm Beach Shores, Town of Manalapan and Town of Mangonia Park.

Thomas Jay Baird of Jones, Foster, Johnston & Stubbs, P.A., Jupiter, for Appellants Town of Jupiter and Town of Lake Park.

Diana Grub Frieser, Boca Raton, for Appellant City of Boca Raton.

Leonard W. Berger, Helene C. Hvizd and Philip Mugavero, West Palm Beach for Appellee Palm Beach County.

Susan L. Trevarthen, Edward G. Guedes and Laura K. Wendell of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, for Amicus Curiae Florida League of Cities.

Taylor, J.

In the wake of a series of local corruption scandals, a grand jury convened in 2009 to investigate county governance and public corruption. The grand jury recommended the creation of an Office of Inspector General ("OIG") with oversight and investigatory powers.

In November 2010, the voters of Palm Beach County approved a referendum amending the County Charter to establish an OIG applicable to both the County and all municipalities approving the amendment. The referendum stated that the program would be funded by the County Commission and all other governmental entities subject to the authority of the Inspector General. After the referendum passed, the County adopted an ordinance implementing the countywide OIG program and sought payment from all thirty-eight municipalities for their share of funding. Over a dozen of the municipalities refused to pay the invoices from the County on the grounds that the demand for payment violated sovereign immunity and constituted an unlawful tax.

The issue in this appeal concerns the legality of the ordinance requiring municipalities in Palm Beach County to contribute to the funding of the voter-mandated OIG program. The Town of Gulf Stream and other municipalities in Palm Beach County appeal a final declaratory judgment upholding the ordinance and ruling that the County may collect funds from the municipalities for the OIG program. We

reverse the final judgment, concluding that sovereign immunity bars the County from forcibly charging the municipalities for the OIG program. We also certify a question of great public importance.

The referendum on the countywide OIG program specifically stated the following:

Shall the Palm Beach County Charter be amended to require the Board of County Commissioners to establish by ordinances applicable to Palm Beach County and all municipalities approving this amendment; a Code of Ethics, an independent Commission on Ethics funded by the County Commission, and an independent Inspector General funded by the County Commission and all other governmental entities subject to the authority of the Inspector General?

YES _____

NO _____

The referendum was approved by a majority of voters in Palm Beach County, including a majority of voters in each of the 38 municipalities within the County.

In May 2011, the Board of County Commissioners adopted an ordinance implementing the countywide OIG program. The implementing ordinance required the County and the municipalities to fund the OIG proportionately based on the actual expenses of each governmental entity. The implementing ordinance authorized the Office of the Clerk and Comptroller to bill each municipality on a quarterly basis. The implementing ordinance also set out the minimum "funding base" for the OIG program at an amount equal to 0.25% of certain vendor contracts.

Jess Santamaria, a county commissioner at the time of the referendum, would later testify that he was surprised the implementing ordinance did not specifically state that the OIG program would be funded with a 0.25% vendor contract fee. Santamaria explained that "the public was told that this was not going to be funded by public funds but primarily and exclusively by vendor fees."

In October 2011, the County Clerk & Comptroller sent invoices to the municipalities within the County, seeking payment for costs associated with the OIG program.

The following month, fifteen municipalities[1] filed suit against the County for declaratory relief, seeking a judgment declaring that the municipalities were not required to pay the expenses of the OIG program and that all expenses of the OIG program would be paid for solely by the County. The municipalities later filed an amended complaint, alleging in pertinent part that the charges to the municipalities for the OIG program were barred by sovereign immunity and constituted an unlawful tax.

Following a three-day bench trial, the trial court entered a final judgment in favor of the County. The court ruled that funding for the OIG program was not a discretionary budgeting decision, that the charges to the municipalities for the OIG program were not barred by the doctrine of sovereign immunity, that the citizens of the municipalities entered into a contract on behalf of their governing bodies to fund the OIG, and that the charges for the OIG program constituted a valid user fee or regulatory fee rather than an unlawful tax.

The trial court denied the municipalities' motion for rehearing, and this appeal followed.

On appeal, the municipalities contend that the trial court erred in concluding that the County could force them to pay for the OIG program by way of a referendum vote. The municipalities argue that sovereign immunity protects them from forced payment for the OIG program, un-

---

1. One of the municipalities later withdrew as a party plaintiff.

less waived by general law or contract. The municipalities contend that neither type of waiver occurred here.

In response, the County argues that by approving the referendum, the voters in the municipalities approved the funding for the OIG, thus eliminating any discretion on the part of the municipalities to avoid funding the program. The referendum and implementing ordinance, the County argues, was a proper exercise of the County's broad, residual power of self-government.

 The issue of sovereign immunity is a legal issue subject to the de novo standard of review. *Plancher v. UCF Athletics Ass'n*, 175 So.3d 724, 725 n.3 (Fla. 2015).

 Sovereign immunity protects the sovereign from being sued without its consent. *City of Fort Lauderdale v. Israel*, 178 So.3d 444, 446 (Fla. 4th DCA 2015). Under Florida law, sovereign immunity is the rule, rather than the exception. *Pan–Am Tobacco Corp. v. Dep't of Corr.*, 471 So.2d 4, 5 (Fla. 1984). Any waiver of sovereign immunity "must be clear and unequivocal." *Manatee Cty. v. Town of Longboat Key*, 365 So.2d 143, 147 (Fla. 1978).

 Although municipal sovereign immunity was historically less broad than the sovereign immunity afforded to states, "[i]mmunity was always deemed to have existed for legislative, quasi-legislative, judicial and quasi-judicial acts of municipalities." *Commercial Carrier Corp. v. Indian River Cty.*, 371 So.2d 1010, 1015–16 (Fla. 1979). Furthermore, since 1968, municipalities, counties, and school districts have been in constitutional parity with one an-

other. *Cauley v. City of Jacksonville*, 403 So.2d 379, 385 (Fla. 1981). Accordingly, the Florida Supreme Court has declared that "sovereign immunity should apply equally to all constitutionally authorized governmental entities and not in a disparate manner." *Id.* at 387. "Municipalities can no longer be identified as partial outcasts as opposed to other constitutionally authorized local governmental entities." [2] *Id.* at 386.

 Where governmental actions are deemed discretionary, as opposed to operational, the government enjoys sovereign immunity. *Commercial Carrier Corp.*, 371 So.2d at 1020–22. Discretionary or planning level functions "are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." *Id.* at 1021.

 A local government's decision to allocate scarce public resources is a discretionary, policy-making decision. *Dennis v. City of Tampa*, 581 So.2d 1345, 1351 (Fla. 2d DCA 1991). Indeed, budgetary considerations and fundamental questions of policy are discretionary matters outside the realm of courts, and are therefore shielded by sovereign immunity. *State, Dep't of Health & Rehab. Servs. v. Lee*, 665 So.2d 304, 307 (Fla. 1st DCA 1995).

 Moreover, referendum provisions in a local government's charter are generally inapplicable to matters of appropriation and fiscal management. *See State ex rel. Keefe v. City of St. Petersburg*, 106 Fla. 742, 145 So. 175, 175 (1933) ("To hold

---

**2.** In a concurring opinion in *American Home Assurance Co. v. National Railroad Passenger Corp.*, 908 So.2d 459, 477 (Fla. 2005), Justice Cantero argued that the common law differences between the sovereign immunity of the state and that of the municipalities "dictate that the sovereign immunity of municipalities must be construed strictly, whereas the im-

munity of the state must be construed more broadly." A concurring opinion, however, has no precedential value. *See Greene v. Massey*, 384 So.2d 24, 27 (Fla. 1980). Therefore, we adhere to *Cauley*'s declaration that sovereign immunity should apply equally to all constitutionally-authorized governmental entities.

that the initiative and referendum provisions of the charter are applicable to appropriation ordinances, would materially obstruct, if not entirely defeat, the purpose of having a budget system."); *but compare* Op. Att'y Gen. Fla. 09–12 (2009) (a municipal charter may be amended pursuant to a petition initiative to require voter approval of any capital improvement project exceeding $500,000).

■ Sovereign immunity may be waived only by general law or by express contract. *See Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So.2d 459, 471 (Fla. 2005) (only the legislature has the authority to enact a general law waiving sovereign immunity); *Israel*, 178 So.3d at 447 (sovereign immunity barred Sheriff's claim against a city based on an implied contract for dispatch services: "[A] municipality waives the protections of sovereign immunity only when it enters into an express contract.").

■ Waiver of sovereign immunity by a city or county cannot be accomplished by local law: *Arnold v. Shumpert*, 217 So.2d 116, 120 (Fla. 1968); *Donisi v. Trout*, 415 So.2d 730, 730 (Fla. 4th DCA 1981).

Section 125.0101, Florida Statutes (2010), however, permits counties to contract for services with municipalities, thereby operating as a waiver of sovereign immunity. Section 125.0101 states in relevant part:

(2) In addition to the powers enumerated in this chapter, the legislative and governing body of a county shall have the power to contract with a municipality or special district within the county for fire protection, law enforcement, library services and facilities, beach erosion control, recreation services and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, and other essential facilities and municipal services. *Such services shall be funded as agreed upon between the county and the municipality or special district. This section shall not be construed to authorize the county to impose any service charge or special assessment or to levy any tax within the municipality or special district,* nor shall this section be construed to authorize the creation of a municipal service taxing unit within such area.

(3) Municipalities and special districts are hereby authorized and empowered to enter into service contracts pursuant to this section.

(4) Except as otherwise provided in this section, the powers granted by this section shall not be deemed to be a limitation of powers already existing but shall be deemed to be cumulative.

§ 125.0101(2)–(4), Fla. Stat. (2010) (emphasis added).

■ Here, the doctrine of sovereign immunity bars the County from charging the municipalities for the OIG program. As a threshold matter, we conclude that the municipalities' decision whether to fund the County's OIG program concerns the allocation of resources and budget management, which is quintessentially a discretionary, planning-level decision that is shielded by sovereign immunity. The referendum did not convert the municipalities' discretionary budgeting decision as to funding for the OIG program into an operational one.

■ Because the decision concerning OIG funding is discretionary, the issue becomes whether there has been a waiver of the municipalities' sovereign immunity. Here, the municipalities' sovereign immunity was not waived by general law or contract. Notwithstanding the constitutional principle that "[a]ll political power is inherent in the people," *see* Art. I, § 1, Fla. Const., voters may not waive a munic-

ipality's sovereign immunity through a local referendum. The referendum here was a local law, not a general law, and therefore did not waive the municipalities' sovereign immunity.[3]

■■■ Nor was the municipalities' sovereign immunity waived by contract. Section 125.0101, Florida Statutes (2010), contemplates that municipalities may form interlocal agreements with a county for services, which would waive the municipalities' sovereign immunity with respect to payment. Here, there was no interlocal agreement between the municipalities and the County. We need not decide whether interlocal agreements under section 125.0101 furnish the exclusive mechanism for a county to charge a municipality for government services. In this case, there was simply nothing that would constitute an express written contract between the municipalities and the County.

Contrary to the trial court's ruling that "the citizens of a municipality may enter into a contract ... by exercising their referendum power," the referendum here did not form a contract between the municipalities and the County for OIG funding. Under section 166.241(2), Florida Statutes (2010), it is the governing body of a municipality—not the electorate—that has the power to adopt a budget. We have

found no legal authority that would allow voters to form binding contracts on behalf of a municipality.[4] Moreover, because the material terms—such as the cost of the program—were missing, the referendum did not give rise to an express contract between the municipalities and the County for OIG funding.

In sum, we hold that the municipalities' decision whether to budget funds for the OIG program is a discretionary decision protected by sovereign immunity, and that the municipalities' sovereign immunity was not waived by general law or express contract. In light of this holding, we do not reach the question of whether the charges for the OIG program constituted a valid user fee or regulatory fee.

We reverse and remand for entry of a declaratory judgment in favor of the municipalities. However, because this case could impact the legal framework by which municipalities and counties interact throughout the state, we certify the following question to the Florida Supreme Court as one of great public importance:

> WHETHER MUNICIPAL SOVEREIGN IMMUNITY BARS A COUNTY FROM CHARGING A MUNICIPALITY FOR A COUNTYWIDE INSPECTOR GENERAL PROGRAM IMPLEMENTED PURSUANT TO A VOTER–

---

3. The out-of-state cases cited by the County do not address Florida law and are distinguishable in any event. For example, in *Bates v. Director of the Office of Campaign & Political Finance*, 436 Mass. 144, 763 N.E.2d 6 (2002), the Supreme Judicial Court of Massachusetts held that a voter-initiated Clean Elections Law waived the Commonwealth's sovereign immunity by necessary implication. But *Bates* is inapplicable for at least two reasons: (1) it involved a statewide voter initiative, rather than a local law; and (2) it involved a waiver of sovereign immunity by implication, whereas Florida law requires a clear and unequivocal waiver of sovereign immunity. In this case, moreover, the municipalities are not

invoking the doctrine of sovereign immunity against themselves, as the trial court found, but rather are invoking it against the County—a separate entity that is attempting to reach the municipalities' coffers.

4. The trial court's reliance on *Brooks v. Watchtower Bible & Tract Society of Florida, Inc.*, 706 So.2d 85, 86 (Fla. 4th DCA 1998), was misplaced because that case merely upheld the legality of a referendum to repeal an ordinance authorizing the sale of an auditorium in West Palm Beach. *Brooks* did not hold that the voters could directly repeal a contract or form a contract on behalf of the city through a referendum.

APPROVED REFERENDUM RE-
QUIRING THE ESTABLISHMENT
BY ORDINANCE—APPLICABLE TO
THE COUNTY AND ALL MUNICI-
PALITIES APPROVING THE REF-
ERENDUM—OF AN INDEPEN-
DENT INSPECTOR GENERAL TO
BE FUNDED BY THE COUNTY
COMMISSION AND ALL OTHER
GOVERNMENTAL ENTITIES SUB-
JECT TO THE AUTHORITY OF THE
INSPECTOR GENERAL?

*Reversed and Remanded; question cer-
tified.*

Forst and Klingensmith, JJ., concur.