DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ACADEMY FOR POSITIVE LEARNING, INC.,** a Florida not for profit corporation, PALM BEACH MARITIME MUSEUM, INC., a Florida not for profit corporation, MARLENY OLIVO, an individual, and
PEDRO OLIVO, an individual,
Appellants,

v.

**SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA,**
Appellee.

No. 4D22-251

[March 22, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 50-2019-CA-000405-XXXX-MB.

Shawn A. Arnold and Braxton A. Padgett of the Arnold Law Firm, LLC, Jacksonville, for appellants.

Sabria A. McElroy and Stuart H. Singer of Boies Schiller Flexner LLP, Fort Lauderdale, and Jon L. Mills of Boies Schiller Flexner LLP, Miami, for appellee.

CONNER, J.

This is the second appearance of this case in this Court. The issue we address here is whether sovereign immunity bars supplemental relief in the form of a money judgment in this declaratory action concerning the distribution of referendum revenues collected but not shared with the appellant charter schools for two consecutive school years. Because sovereign immunity is not a defense to enforcement of contracts entered into by governmental entities, we reverse the trial court's denial of the request for supplemental relief.

*Background*

Appellants are four charter schools operating in Palm Beach County ("the charter schools") and two parents of a student attending one of the charter schools.

In *Academy for Positive Learning, Inc. v. School Board of Palm Beach County* (*Academy I*), 315 So. 3d 675 (Fla. 4th DCA 2021), we determined that a portion of a referendum passed by the voters in 2018 as submitted by the appellee, the School Board of Palm Beach County ("the school board"), was illegal because it excluded charter schools from receiving levied funds. *Id.* at 684-85. We remanded for the trial court to enter an order denying the school board's motion for summary judgment and granting charter schools' motion for summary judgment. *Id.* at 684. We also determined that the issue of the commencement date for sharing the 2018 referendum funds was not ripe for review because the trial court had not reached the issue. *Id.* at 685-86. We directed the trial court on remand to conduct any necessary hearings to make findings of fact and conclusions of law as to when the sharing of funds must begin and whether the charter schools are entitled to retroactive sharing of funds already distributed. *Id.* at 686.

On remand, the trial court found that the charter schools were entitled to the referendum's funds going forward, but that sovereign immunity barred the charter schools' claim for retroactive monetary damages for the two years they did not receive funds.

*Appellate Analysis*

The charter schools contend on appeal that the trial court erred in determining that sovereign immunity barred their request for retroactive monetary damages for the referendum funds for the 2019-2020 and 2020-2021 school years.

"The issue of a party's entitlement to sovereign immunity is a legal issue subject to the de novo standard of review." *Lee Mem'l Health Sys. v. Hilderbrand*, 304 So. 3d 58, 60 (Fla. 2d DCA 2020).

Because the action below was a declaratory action, the trial court correctly determined that the charter schools could properly seek supplemental relief in the form of monetary damages once their rights were adjudicated. *See* § 86.061, Fla. Stat. (2019); *McAllister v. Breakers Seville Ass'n*, 41 So. 3d 405, 408 (Fla. 4th DCA 2010) ("It is generally held that a money judgment may be obtained for damages sought as incidental or supplemental relief pursuant to a declaratory decree." (quoting *Thomas v. Cilbe, Inc.*, 104 So. 2d 397, 402 (Fla. 2d DCA 1958))); *Hill v. Palm Beach*

2

*Polo, Inc.*, 805 So. 2d 1014, 1016 (Fla. 4th DCA 2001) ("[D]eclaratory relief . . . includes all relief necessary, including money judgments.").

The parties put forth numerous arguments as to why sovereign immunity does or does not apply to block an award of monetary damages for the 2019-2020 and 2020-2021 school years' funds not shared with the charter schools. However, we conclude that the analysis is simple and straightforward. Simply put, our supreme court determined almost forty years ago that sovereign immunity does not preclude enforcement of contracts, including the imposition of damages.

In *Pan-Am Tobacco Corp. v. Department of Corrections*, 471 So. 2d 4 (Fla. 1984), our supreme court addressed a certified question of great public importance as to whether the state could invoke sovereign immunity to bar the imposition of money damages for improper termination of a contract. *Id.* at 5. In answering the certified question, the court said:

> In Florida, sovereign immunity is the rule, rather than the exception, as evidenced by article X, section 13 of the Florida Constitution: "Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."
>
> In section 768.28, Florida Statutes (1981), the legislature has explicitly waived sovereign immunity in tort. There is no analogous waiver in contract. Nonetheless, the legislature has, by general law, explicitly empowered various state agencies to enter into contracts. *See*[,] *e.g.*, §§ 23.017, 153.62(11), 163.370, 230.22(4), 337.19(1), Fla. Stat. (1981). Additionally, it has authorized certain goals and activities which can only be achieved if state agencies have the power to contract for necessary goods and services. *See*[,] *e.g.*, §§ 20.315, 945.215, Fla. Stat. (1981).
>
> It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract. *Howard Cole & Co. v. Williams*, 157 Fla. 851, 27 So. 2d 352 (1946). Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound. *Miami Coca-Cola Bottling Co. v. Orange-Crush Co.*, 291 F. 102 ([S.D.] Fla. 1923), *affirmed*, 296 F. 693 (5th Cir. 1924).
>
> . . . .

3

> Where the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the legislature has clearly intended that such contracts be valid and binding on both parties. As a matter of law, the state must be obligated to the private citizen or the legislative authorization for such action is void and meaningless. *We therefore hold that where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.*

*Id.* (emphasis added). The court went on to "emphasize that our holding here is applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." *Id.* at 6.

Notably, section 1002.33(7), Florida Statutes (2019), provides that "[t]he terms and conditions for the operation of a charter school . . . shall be set forth by the sponsor and the applicant in a written contractual agreement, called a charter." § 1002.33(7), Fla. Stat. (2019). Thus, the written charter school contracts in this case were clearly authorized by statute.

Below and on appeal, the school board contends that the holding of *Pan-Am* is limited to suits for breach of contract. The trial court adopted that position in the order under review. We disagree that the holding in *Pan-Am* is so narrow in application. We understand the court's statement that, "[w]here the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, *the legislature has clearly intended that such contracts be valid and binding on both parties,*" *Pan-Am*, 471 So. 2d at 5 (emphasis added), to apply to the enforcement of contracts generally, including damages and specific performance. And we understand the legal principle to apply to contracts entered by one governmental entity as offeror and another governmental entity as offeree.

After the mandate in *Academy I* issued, the charter schools moved for entry of their motion for summary judgment as directed by our remand instructions and additionally requested supplemental relief in the form of a money judgment equal to each charter school's share of the referendum revenues that were unpaid during the litigation. The request is consistent with our remand direction to determine when the sharing of revenue funds

must begin and whether the charter schools are entitled to retroactive sharing of funds already distributed.

We reject the school board's argument that because each charter school contract has a provision that the school board does not waive sovereign immunity, sovereign immunity is a valid defense to supplemental relief. As our supreme court pointed out in *Pan-Am*, to agree with such an argument would render the charter school contracts illusory. 471 So. 2d at 5.

On the facts of this case, we respectfully disagree with the dissent's conclusion that the charter schools did not preserve the issue of waiver of sovereign immunity by contract. There is no question the charter schools raised the issue below. Additionally, the charter schools' briefing repeatedly references and relies on the charter school contracts. In the specific context of the arguments raised in this case, this was enough to preserve the issue for our review. *See Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal."); *Drew v. Hobbs*, 141 So. 596, 596 (Fla. 1932) (finding issue "sufficiently raised" despite not being "stressed" in briefs or oral argument); *DiGiacomo v. Kogan & Disalvo, P.A.*, 317 So. 3d 1163, 1164 (Fla. 4th DCA 2021) (finding initial brief sufficiently raised argument to be considered on appeal, despite not specifically citing supporting statute); *Jet Air Freight v. Jet Air Freight Delivery, Inc.*, 264 So. 2d 35, 39 (Fla. 3d DCA 1972) ("Our review of the record and briefs satisfies us that the issue was sufficiently raised.").

The charter schools also argue that we should address the issue of whether they are entitled to interest on the retroactive funds under section 1002.33(17)(e), Florida Statutes (2019). However, because the trial court did not rule on this issue, we remand the issue to the trial court for a ruling.[1]

*Conclusion*

---

[1] We decline the charter schools' request to determine entitlement to interest for two reasons: (1) the trial court did not reach the issue; and (2) the matter was not fully briefed in this Court and the school board has not conceded on appeal that the issue is a pure matter of law. *See Milan Inv. Grp., Inc. v. City of Miami*, 172 So. 3d 458, 463 n.11 (Fla. 3d DCA 2015) (making a "rare exception" to the general rule that an appellate court should not decide issues not first determined by the trial court, where the parties agreed that the appellate court should decide the issue of law, there was a complete record below, and the issues were fully presented below and on appeal).

Because the defense of sovereign immunity does not protect the school board from supplemental relief in the declaratory action below in the form of a money judgment equal to each charter school's share of the referendum revenues which were unpaid during the litigation, we reverse the trial court and remand for further proceedings consistent with this opinion. On remand, the trial court shall conduct any necessary hearings to make findings of facts and conclusions of law as to the amount of referendum funds payable to the charter schools retroactively and whether the charter schools are entitled to interest on late payments of funds pursuant to section 1002.33(17)(e).

*Reversed and remanded for further proceedings.*

LEVINE, J., concurs specially with opinion.
MAY, J., dissents with opinion.

LEVINE, J., concurring specially.

I fully agree with the majority opinion that the trial court erred in this case by failing to find that the school board waived sovereign immunity by operation of an agreed-to contract. The trial court erred by finding that the school board could not be required to share with the charter schools the additional funding generated by the 2018 referendum for the entire four-year period and was obligated to share for only two prospective years of the four-year funding cycle. I write to elaborate on the other reasons in this record that support a reversal in this case.

Aside from the clear waiver of sovereign immunity by contract, the action of the school board in the distribution of the funds raised by the 2018 referendum is the type of ministerial action that is not subject to the defense of sovereign immunity. The trial court erred in finding sovereign immunity applied because the act of distributing the 2018 referendum funds was purely operational, not discretionary. "[S]overeign immunity does not shield acts that are 'operational' in nature but only those that are 'discretionary.'" *City of Pinellas Park v. Brown*, 604 So. 2d 1222, 1226 (Fla. 1992). A discretionary act involves "questions of policy and planning," whereas an operational act "merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* (citation omitted).

In *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010 (Fla. 1979), the Florida Supreme Court adopted a four-part test in determining whether sovereign immunity applies:

6

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* at 1019 (citation omitted). If each of the questions are "clearly and unequivocally answered in the affirmative," then the challenged action can be classified as discretionary. *Id.* (citation omitted); *see also Wallace v. Dean*, 3 So. 3d 1035, 1053-54 (Fla. 2009). In the instant case, all of the questions outlined in *Commercial Carrier* cannot be answered in the affirmative.

"Where governmental actions are deemed discretionary, as opposed to operational, the government enjoys sovereign immunity." *Town of Gulf Stream v. Palm Beach County*, 206 So. 3d 721, 725-26 (Fla. 4th DCA 2016) (finding that allocations of resources and budget management is a discretionary, planning-level decision shielded by sovereign immunity).

As this court recognized in the *Academy* en banc decision, *Academy for Positive Learning, Inc. v. School Board of Palm Beach County*, 315 So. 3d 675 (Fla. 4th DCA 2021), the school board's decision to seek funding by referendum was discretionary. "Both sections 1011.71(1) and (9) use the words 'may levy' to describe how a school district may increase its operating millage above the required operating millage also described in section 1011.71(1)." *Id.* at 679. "The consistent use of the words 'may levy' makes both increased operating millages discretionary." *Id.* It is clear that the school board's original decision to levy a voted millage was discretionary.

Further, this court's en banc decision also recognized that the method by which those funds are distributed is operational or ministerial. The *Academy* en banc opinion recognizes that section 1002.33(17)(b) states that the funding of charter schools is "the sum of" three sources, divided by the number of students in the school district, multiplied by the number of charter school students. *Id.* at 680. Thus, once the school board exercised its discretion to seek funds by a voter approved millage, the

method of distributing those funds was a mere ministerial act. The method, as directed by statutes and outlined in the *Academy* en banc opinion, is a formulaic act without any statutory discretion. *See also Sch. Bd. of Collier Cnty. v. Fla. Dep't of Educ.*, 279 So. 3d 281, 291-92 (Fla. 1st DCA 2019) (recognizing that distribution of funding to charter schools is formulaic).[2]

Section 1002.33(17) states that students in charter schools "shall be funded" the same as students in other public schools. The word "shall" in a statute requires mandatory compliance. *See DeGregorio v. Balkwill*, 853 So. 2d 371, 374 (Fla. 2003). "[A] court has authority to order an agency to comply with a legislative mandate requiring funds to be spent in a particular way. Otherwise, there could be no remedy if a state agency refused to comply with the legislature's authority to appropriate funds for a specific purpose." *Daly v. Marion County*, 265 So. 3d 644, 649-50 (Fla. 1st DCA 2018) (citations omitted); *see also* 52 Am. Jur. 2d Mandamus § 121 (recognizing that a public official may not disregard a statute or regulation in determining how to spend money). Thus, applying the test enunciated by *Commercial Carrier*, the actions of the school board would be operational in nature and not discretionary. The mere act of distributing the 2018 referendum funds does not "require the exercise of basic policy evaluation, judgment, and expertise on the part of the" school board. 371 So. 2d at 1019. Nor did the school board "possess the requisite constitutional, statutory, or lawful authority and duty to" retain all of the 2018 referendum funds in light of section 1002.33(17). *Id.*[3]

The school board's retention of all the 2018 referendum funding, and the exclusion of the charter schools from that funding, was akin to an

---

[2] To accept the dissent's position—that if the initial referendum is discretionary, then any resulting remedies would also be discretionary—would result in governmental bodies, like the school board, being untethered from any ramifications for their failure to comply with state statutes. Further, an initial discretionary decision does not mean that subsequent acts are also discretionary. *See Joseph v. Chronister*, No. 8:16-cv-274-T-35CPT, 2019 WL 8014507, at *7 (M.D. Fla. Jan. 3, 2019) (holding that initial decision of controlling the number of attendees at an event was discretionary, while the subsequent act of ejecting unruly attendees was operational or ministerial).

[3] "[I]f one or more of the questions asked by the . . . court could be answered in the negative, further inquiry might be required by the court." *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989). This inquiry would determine whether the court would be entangled "in a nonjusticiable political question." *Wallace*, 3 So. 3d at 1053. None of the law or facts implicated in the instant case present a nonjusticiable political question, nor do the parties claim a nonjusticiable issue is involved.

"illegal extraction" of funds. In *Bill Stroop Roofing, Inc. v. Metropolitan Dade County*, 788 So. 2d 365, 367 (Fla. 3d DCA 2001), the Third District held that the county could not invoke sovereign immunity to retain money it obtained from charging a registration fee that was prohibited by state statute. In support, the court relied on a line of cases involving "a county's refusal to obey a direct legislative mandate." *Id.* The Third District also noted "numerous case examples in which the courts have mandated the refund of illegally extracted monies." *Id.* at 366. The court concluded that "governments are required to refund taxes and fees illegally exacted, and the doctrine of sovereign immunity is inapplicable thereto." *Id.* at 368 (footnotes omitted).

Thus, whether the school board's actions were an "illegal extraction" or an "illegal retention" of funds, in any event, the refusal of the school board to follow a direct legislative mandate of a ministerial action subjects it to claims that are not barred by sovereign immunity. The school board cannot invoke sovereign immunity to retain more than its fair share of money obtained from a referendum that was contrary to state statute. Like in *Bill Stroop*, the school board refused to obey a direct legislative mandate. Although this case does not involve illegally extracted monies, it does involve illegally retained monies. The school board had a legal duty to share the money with the charter schools, but failed to do so. Just as governments are required to refund illegally extracted taxes and fees, the school board is required to distribute to the charter schools funds which the school board illegally retained.

In *Parker v. American Traffic Solutions, Inc.*, No. 14-CIV-24010, 2015 WL 4755175 (S.D. Fla. Aug. 10, 2015), the plaintiffs sued the state for fees improperly charged in connection with red light cameras. The court found the claims were not barred by sovereign immunity because the plaintiffs alleged the "county's refusal to obey a direct legislative mandate" and "because the Plaintiffs' deprivation was caused by the unlawful acts of the Local Governments." *Id.* at *4. Like in *Parker*, sovereign immunity does not bar the instant action because the school board acted illegally, as found by this court's en banc opinion in *Academy*.

This court's en banc decision determined the school board violated Florida law by not distributing the funds as mandated by Florida statutes. *Academy*, 315 So. 3d at 677, 684 (finding "that the 2018 referendum violated Florida law" and reversing the trial court's "finding [that] the 2018 referendum did not violate Florida law"). This court found the exclusion of charter schools to be invalid and struck that limitation from the referendum. *Id.* at 685. Further, the doctrine of law of the case precludes the school board from arguing that its actions in withholding the funding

9

from the charter schools was not illegal, since this court's en banc opinion expressly stated that the school board acted illegally. "The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001).

The school board argues that its actions should not be considered illegal since its actions were not determined to be illegal until this court ruled as an en banc court. However, it was precipitous for the school board to assume any result until a mandate was issued in its case. *See O.P. Corp. v. Vill. of N. Palm Beach*, 302 So. 2d 130, 131 (Fla. 1974) (stating that "the judgment of an appellate court, where it issues a mandate, is a final judgment in the cause"). To accept the school board's position would mean the school board would be entitled to retain funds simply because it did not lose until later in the legal proceedings. Nor can the school board rely on laches or its expenditure of some funds to which the charter schools are entitled, as the charter schools brought a legal action nearly six months before the referendum went into effect. *See Broward Cnty., Fla. Bd. of Cnty. Comm'rs v. Burnstein*, 470 So. 2d 793, 795-96 (Fla. 4th DCA 1985) (rejecting county's argument that refunds were not required because the funds had long since been expended and finding laches inapplicable to the extent there was no unreasonable delay in contesting the ordinance).

In summary, the school board is liable for all four years of funding because it signed a contract with the charter schools requiring all parties to honor the terms and conditions of the contract, including the funding methodology enacted by the legislature. If the school board could hide behind claims of sovereign immunity, then the contract would be an empty promise. Further, the school board is not protected by sovereign immunity where its actions are simply operational, or ministerial, in nature. The school board must comply with the clear dictates mandated by the legislature where the guidelines are merely formulaic. Finally, where the referendum funds are illegally retained and not distributed by operation of clear Florida law, then the governmental body may not, under these particular facts, claim sovereign immunity.

MAY, J., dissenting.

I respectfully dissent.

I suggest the "but for" test be applied to both the majority and the special concurring opinions in this case. Because when applied, both

opinions lose their foundation and crumble.

This case has a long history with this court. It began when the plaintiffs appealed a summary judgment for the School Board. The plaintiffs argued the School Board's decision to place a referendum on the ballot asking for voter approval of an ad valorem levy for the operational needs of only non-charter district schools violated section 1002.33(17), Florida Statutes (2018). In an en banc decision on rehearing, this court reversed and remanded the case to the circuit court for an order denying the School Board's motion and granting the plaintiffs' motion for summary judgment.[4]

Because the parties agreed the referendum's "non-charter" limitation was severable, which the en banc majority deemed legally permissible, the en banc majority severed and struck the "non-charter" limitation from the referendum.[5] The en banc majority then concluded the remedy was "not ripe" for review and remanded the case to the trial court to conduct any necessary hearings.

The trial court did just that. First, the trial court bifurcated the plaintiffs' requests between prospective and retrospective sharing of the referendum-generated funds. The trial court "granted the plaintiffs' request to receive their share of the 2018 Referendum revenues from July 1, 2021[,] forward."

The trial court then addressed the plaintiffs' request for monetary damages; i.e., a lump-sum amount for their "proportionate share of the 2018 Referendum revenues collected from the date of its enactment through June 302, 2021." The trial court acknowledged the plaintiffs' ability to seek supplemental relief based on their declaratory judgment claim. It then tackled the School Board's sovereign immunity defense and decided the plaintiffs were not entitled to retroactive monies.[6]

---

[4] I joined the dissent in the en banc opinion. Alas, I was on the losing side of that battle as well.

[5] The court did so despite the voters never having approved the referendum as amended by the decision.

[6] The trial court's decision is supported by *Manatee County v. Town of Longboat Key*, 365 So. 2d 143, 147 (Fla. 1978). There, our supreme court distinguished "entitlement to an order granting prospective enforcement of a legislative mandate [from] the entry of a money judgment seeking redress for past actions." *Id.* at 147. The supreme court held "that a court may order a board of county commissioners to follow the dictates of the statute, but may not enter money judgments against counties for the past tax years. . . ." *Id.* at 148.

No one disputes the School Board is entitled sovereign immunity unless that immunity is abrogated or waived. As the trial court stated, any "waiver of sovereign immunity must be clear and unequivocal." *Manatee County v. Town of Longboat Key*, 365 So. 2d 143, 147 (Fla. 1978). Waivers must be construed narrowly in favor of the government to help protect "the public against profligate encroachments on the public treasury." *Barnett v. Dep't of Fin. Servs.*, 303 So. 3d 508, 513 (Fla. 2020) (citing *Spangler v. Fla. State Tpk. Auth.*, 106 So. 2d 421, 424 (Fla. 1958)).

In the trial court, the plaintiffs suggested three ways in which the School Board waived sovereign immunity. First, it was statutorily waived by sections 1002.33(17) and 1002.33(7)(b), Florida Statutes (2018). Second, it was waived under an extension of *Pan-Am Tobacco Corp. v. Dep't of Corrections*, 471 So. 2d 4 (Fla. 1985). And third, sovereign immunity does not apply to the ministerial act of paying the plaintiffs. For the reasons expressed below, none of these theories support a waiver of sovereign immunity.

First, sections 1002.33(17) and (7), Florida Statutes (2018), address the method by which the School Board pays charter schools. As the trial court correctly noted, "neither statute **expressly** authorizes damages judgments against a school board, or even judgments obtained by separate civil action filed in the court system." (Emphasis added). Even if a waiver could be "implied" by those statutory sections, they do not constitute the "express" waiver required by law.

Second, even if *Pan-Am* could be applied to waive sovereign immunity, there is an **elephant** in the proverbial room, or should I say, appeal in this case. While raised in the trial court, the plaintiffs failed to argue contractual waiver of sovereign immunity in their briefing to this court. It is therefore unpreserved and cannot support a reversal.

In their initial brief, the plaintiffs generally state they are entitled to damages under the statutory and contractual duty to share the revenues. They never argue the School Board waived sovereign immunity by having entered into the charter contracts. They do not cite *Pan-Am*.

In fact, only three isolated sentences on different pages are as close as the plaintiffs come to arguing the School Board waived sovereign immunity by entering into the charter contracts. But a sentence does not an argument make. *See State Comprehensive Health Ass'n v. Carmichael*, 706 So. 2d 319, 321 (Fla. 4th DCA 1997) ("[I]n order to obtain appellate review, alleged errors relied upon for reversal must be raised clearly,

12

concisely, and separately as points on appeal.") (quoting *Singer v. Borbua*, 497 So. 2d 279, 281 (Fla. 3d DCA 1986)).

Indeed, in the section of the plaintiffs' initial brief entitled "**Sovereign Immunity Has Been Waived in this Instance**," the word "contract" cannot be found. The **only** argument made is that sovereign immunity was waived by sections 1002.33(17) and (7), Florida Statutes (2018).

As the majority well knows, we are limited to the arguments raised by the parties on appeal. A party fails to preserve or waives an argument not raised in its briefs. *See Orchid Island Props., Inc. v. W.G. Mills, Inc. of Bradenton*, 889 So. 2d 142, 143 (Fla. 4th DCA 2004); *Prince v. State*, 40 So. 3d 11, 12 (Fla. 4th DCA 2010). No matter the existence of a potential theory to reverse, we simply cannot do so when the argument was not raised by the party. Yet, that is precisely what the majority has done.

Third, the plaintiffs suggest sovereign immunity does not apply to the ministerial act of paying the monies owed. This is the subject of the concurrence. "But for" the defense of sovereign immunity applying to the "ability to sue" the School Board, and not the remedy, the concurrence has a legitimate point.

Our supreme court has held that government is not immune in tort for operational tasks but maintains immunity for its discretionary acts. *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010 (Fla. 1979). The concurrence suggests the payment of money owed is an operational/ministerial act for which the School Board can be held liable.

The flaw in that suggestion is that the liability for that payment is based on the School Board's discretionary decision to draft a ballot referendum that excluded charter schools, something it had successfully done twice before. It is a decision the concurrence concedes was discretionary. *See also Town of Gulf Stream v. Palm Beach County*, 206 So. 3d 721 (Fla. 4th DCA 2016) (holding that whether to budget funds was a discretionary decision protected by sovereign immunity).

"Sovereign immunity is a common law principle that provides that 'a sovereign **cannot be sued** without its own permission.'" *Dep't of Highway Safety & Motor Vehicles v. Hightower*, 306 So. 3d 1193 (Fla. 1st DCA 2020) (quoting *Fla. Dep't of Health v. S.A.P.*, 835 So. 2d 1091, 1094 (Fla. 2002)) (emphasis added). The doctrine is steeped in the legal maxim that "the king can do no wrong." The justification for sovereign immunity is based "on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends."

*Kawananokoa v. Polyblank,* 205 U.S. 349, 352 (1907).

You cannot segregate the remedy from the discretionary act which gave rise to the alleged liability and then suggest the act is ministerial. Sovereign immunity is a defense to whether the School Board can be sued for placing the referendum on the ballot, not what the remedy is if its action is later determined to have been in error.

So, both the majority and the concurrence correctly state the law. "But for" the majority's failure to recognize "P" for preservation, they may have had a point. And "but for" the sovereign immunity defense applying to the ability to sue the School Board, not the remedy, the concurrence might have had a point. But neither the majority nor the concurrence survive the "but for" test.

For the reasons stated above, I dissent.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***